## UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAEED ABEDINI | ) | |
| 408 Mill View Lane | ) | **JURY DEMAND** |
| Lynchburg, VA 24502 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ZIBANDEH ABEDINI GALANGASHY | ) | |
| 408 Mill View Lane | ) | **Case No.: 1:18-cv-588** |
| Lynchburg, VA 24502 | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE GOVERNMENT OF THE | ) | |
| ISLAMIC REPUBLIC OF IRAN, | ) | |
| Its Ministries, Agencies, and Instrumentalities | ) | |
| c/o Ministry of Foreign Affairs | ) | |
| Khomeni Avenue | ) | |
| United Nations Street | ) | |
| Tehran, Iran, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiffs Saeed Abedini and Zibandeh Abedini Galangashy complain of the actions of

the Defendant, The Government of the Islamic Republic of Iran, its Ministries, Agencies, and

Instrumentalities, and states in support thereof as follows:

## PARTIES

1.      Plaintiff Saeed Abedini ("Pastor Saeed") is a U.S. citizen and a resident of

Virginia. Pastor Saeed was falsely imprisoned and tortured for 1,208 days (approximately three

and a half years) by Defendant the Government of the Islamic Republic of Iran, its Ministries, Agencies, and Instrumentalities ("Iran").

2.      Plaintiff Zibandeh Abedini Galangashy ("Zibandeh") is Saeed Abedini's younger sister. She brings claims for loss of solatium and/or intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia.

3.      Iran is a foreign sovereign that has been designated a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App § 2405(j)), both at the time of the matters at issue in this Complaint and at the time this Complaint was filed. Its activities as complained of herein was outside the scope of immunity provided by the Foreign Sovereign Immunities Act ("FSIA"), including 28 U.S.C. § 1605A.

## JURISDICTION

4.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1330 and 1331, and pursuant to the FSIA, 28 U.S.C. §1605A.

5.      Venue lies in this Court pursuant to 28 U.S.C. § 1391(f)(4).

6.      Pastor Saeed was domiciled in the State of Idaho at the time of his confinement and torture.

## STATEMENT OF FACTS

7.      Pastor Saeed was born in Tehran, Iran in 1980. He grew up Muslim but converted to Christianity in 2000. He became a pastor shortly thereafter and began organizing a network of

house churches throughout Iran.[1] Converting to Christianity, practicing the Christian faith and organizing Christian house churches are not illegal under Iranian law. [2]

8.      Zibandeh was born in Iran in 1985. She converted to Christianity in early 2001 and was the first in her family to covert after Pastor Saeed. Shortly thereafter, Zibandeh began helping Pastor Saeed organizing and operating Christian house churches. She traveled with Pastor Saeed to church meetings teaching the Bible, engaging in Christian fellowship and spending personal time with house church members. She also served alongside Pastor Saeed in the women's and youth ministries at the house churches while continuing her schooling as well.

9.      In 2004, Pastor Saeed married Naghmeh Panahi, a duel citizen of Iran and the United States. They had a Christian ceremony in Iran and the Iranian government issued a marriage certificate that states their marriage is "Christian".

10.     In 2005, the leadership in Iran changed and the new administration intensified the pressure placed on Iranian Christians. Because of this, Pastor Saeed and his wife legally left Iran for the United States. They settled in Boise, Idaho and began raising a family.  They had a girl in 2006 and a boy in 2008. Meanwhile, Pastor Saeed worked as a pastor in Idaho.

11.     In July of 2009, Pastor Saeed and his wife thought that the persecution of Christians may have subsided and they decided to visit family in Iran. However, after three weeks in Iran, Pastor Saeed was arrested at the airport when he was leaving for the U.S. He was

---

[1] Due to space limitations as well as the limited number of permits granted for churches, many Protestant Christians began forming house churches, which are informal churches in private residences across the country where people could gather, worship and have fellowship.

[2] Apostasy, the act of abandoning or renouncing one's religion, is not codified as a crime under Iran's Islamic penal code or any other Iranian law. However, some Iranian courts circumvent the lack of a codified prohibition of apostasy by invoking legal provisions in the Iranian constitution that allow courts to utilize Islamic jurisprudence in the absence of codified law. It should be noted that criminalizing the choice of religion violates international law. HRW, *Iran: Religious and Ethnic Minorities*; U.S. Library of Congress, Congressional Research Service, *Iran: Ethnic and Religious Minorities,* by Hussein D. Hassan, CRS Report RL34021 (Washington, DC: Office of Congressional Information and Publishing, November 25, 2008), http://www.fas.org/sgp/crs/mideast/RL34021.pdf, (February 13, 2018).

briefly placed under house arrest and interrogated by Iranian authorities. They told Pastor Saeed

that if he promised to discontinue his involvement with house churches then he would not be

arrested and free to travel to and from Iran. They encouraged Pastor Saeed to participate in

humanitarian efforts. Pastor Saeed agreed and began working on building and opening secular

orphanages in Iran.

12.     Pastor Saeed ceased all work with house churches and safely traveled to and from

Iran eight times to help build a secular orphanage between 2009 and 2012.

13.     On March 11, 2010, Pastor Saeed proudly became a naturalized U.S. citizen

through marriage. On that day, a United States Senator gave Pastor Saeed a flag that flew over

the Capital building. It remains one of his most prized possessions to this day.

14.     In July 2012, Pastor Saeed traveled to Iran to approve the final board member for

an orphanage located outside of Rasht, Iran. On July 28, 2012, a few days before Pastor Saeed

planned to return to the United States, Iranian Revolutionary Guards took him off a bus and

confiscated both his United States and Iranian passports. Pastor Saeed was interrogated and then

placed on house arrest at his parents' home in Tehran.

15.     During this time Pastor Saeed's sister, Zibandeh, was studying abroad in London.

Beginning on or about September 19, 2012 she started being harassed and followed by people

she believed to be working for the Iranian government. She lived in constant worry and fear of

being kidnaped or taken back to Iran to be imprisoned – or worse.

16.     On September 26, 2012, five to ten Iranian Revolutionary Guards raided Pastor

Saeed's family home. The guards ransacked the residence and confiscated their belongings,

including currency, phones, computers, cameras, personal documents and hundreds of books.

The agents forcibly demanded and obtained the passwords to their electronics and various online accounts.

17.     The agents then handcuffed and blindfolded Pastor Saeed, took him outside and threw him into a van. Pastor Saeed was unsecured in the vehicle and he was tossed about as the van sped off, took sharp turns at high rates of speed and made sudden stops. Pastor Saeed thanked God that he was still alive when the vehicle finally stopped at its final destination: the notoriously ruthless Evin Prison. The agents laughed and mocked Pastor Saeed, still blindfolded and shackled, as he tripped, fell and bounced into walls and other objects as they brought him to a barren room. There he was forced to strip. He was given a set of pajamas and small blanket, which was thin as paper. Finally, after being lead to another room, he was told to face the wall and remove his blindfold. Pastor Saeed found himself in a 1.5 by 1 meter solitary confinement cell where he would remain for the next four weeks and intermittently throughout the duration of his confinement.

18.     On the second day of captivity, Pastor Saeed was taken to what appeared to be a courtroom. There a judge sentenced Pastor Saeed to death for being a U.S. spy and converting Muslims to Christianity. He was taken to this court two more times within those first two weeks and sentenced to death each time. The judge told him that the sentence for converting one Muslim to Christianity is death, and since Pastor Saeed had converted thousands, the judge could take off hundreds of the charges against him and still hang him thousands of times. Pastor Saeed did not have an attorney for any of these closed-door court appearances. To this day, Pastor Saeed does not know whether these were official court appearances or an interrogation tactic.

19.     During this time and throughout the duration of his confinement, Pastor Saeed suffered intense physical abuse. The torture that he endured included being punched and kicked,

hit with batons, having his bare feet stepped on with heavy boots and being electrocuted. A bright light was kept on 24 hours a day in his cell causing sensory deprivation and making it difficult to sleep. His cell was cold and in extremely unsanitary condition. The paper thin blanket he was provided with could not keep him warm as he tried to sleep on the dirty concrete floors, which were caked with feces, urine, mold, dead insects and rodents, and dried blood from presumably other prisoners. Guards regularly threw water on his cell floor spreading the unsanitary conditions and making it even harder to sleep. He was also malnourished and denied medical care.

20.     During this time and throughout the duration of his confinement, Pastor Saeed also suffered extreme and continuous psychological torture. Other than his interrogations, he had virtually no human contact for the entirely of his 1,208 days in confinement. Even when he was taken from solitary confinement and placed with other prisoners, the guards directed the other prisoners not to interact with him. At other times, the guards told the other prisoners that they would be rewarded if they beat or tried to kill Pastor Saeed.

21.     While interrogated, Iranian authorities threatened and humiliated Pastor Saeed, his family and his country. He was told that Military Intelligence officials were watching his sister, Zibandeh, who was studying in London. Pastor Saeed's interrogators said that they planned to kidnap, rape and imprison her. His interrogators showed Pastor Saeed photographs of his sister in London as proof. His interrogators also threatened to arrest, torture and kill his immediate family and other parishioners of house churches if he did not confess to being a spy for the United States.

22.     Zibandeh, fearing for her safety, sought and was granted asylum in the United States. She arrived in the United States on January 18, 2013 and remains there to date.

23.     In early January 2013, Pastor Saeed's case was referred to Branch 26 of the Tehran Revolutionary Court and assigned to Judge Pir-Abassi, known in the international law community as one of Iran's "hanging judges" for the number of people he has sent to the gallows.

24.     On January 21, 2013, Pastor Saeed was formally charged with attempting to undermine the Iranian government by creating a network of Christian house churches. Pastor Saeed was first allowed to speak with his attorney for ten minutes the day before trial began, although his family had retained the attorney for over a month prior to trial. Despite numerous requests, Pastor Saeed's attorney was never granted access to the prosecution's file nor was he permitted to know the full extent of the charges brought against his client. Pastor Saeed and his attorney were allowed in the courtroom on the first day of trial but were not allowed to present a defense. After the first day of trial, Pastor Saeed and his attorney were barred from the courtroom as his trial continued on for several days. On January 27, 2013, Pastor Saeed was convicted of undermining the national security of Iran and sentenced to 8 years in prison. The prosecutor, the prison guards and his interrogators told Pastor Saeed not to worry, "We have ways to keep you after your eight year sentence is finished."

25.     Pastor Saeed returned to Evin Prison and continued to suffer the abuses described above, including interrogations, and feared that he would be detained indefinitely or killed.

26.     His attorney filed an appeal in February 2013. His conviction and sentence were affirmed August 2013 by a two-judge panel of Branch 36 of the Tehran Appeals Court.

27.     On November 3, 2013, Pastor Saeed was transferred to Rajai Shahr Prison in Karaj, also known as Gohardasht Prison. The prison guards told Pastor Saeed that they are sending a message to the rest of the world, and it is "like a punch in the face to the United States," by transferring him on that day – the eve of the anniversary of the 1979 Iranian Hostage Crisis.

7

28.     In Rajai Shahr prison, Pastor Saeed was placed in the "murder-murder" cell – a part of prison where prisoners who were convicted for murder are placed after killing another person while in the prison. In this section, Pastor Saeed witnessed the killing of six inmates by other inmates. The murder-murder cell is a cramped cell housing approximately 120 prisoners who roam freely without the presence or oversight of any prison guards. Pastor Saeed woke up after the first night next to a severed head on one side and a lifeless body on the other. An inmate told Pastor Saeed that he was instructed by the prison guards to chop off that inmate's head. Pastor Saeed witnessed five other inmates die the next day in a prison riot that was not broken up because the prison guards were too afraid to enter the cell. He also regularly witnessed prison guards beating inmates before taking them outside to be hanged. The guards told Pastor Saeed that they'd be doing the same to him soon. At other times, he would wake up to inmates standing over him holding knives.

29.     The physical conditions in Rajai Shahr were even worse than Evin prison and Pastor Saeed's physical and psychological abuse, described above, was further exacerbated.

30.     Pastor Saeed endured this trauma for 1,208 days, never knowing if or when he would be released and reunited with his family.

31.     The United Nations Human Rights Council Working Group on Arbitrary Detention released an opinion condemning the "arbitrary and illegal detention" of Pastor Saeed.[3] President Obama, Secretary of State John Kerry, and other high-level U.S. officials also called repeatedly for Pastor Saeed's release.

32.     Zibandeh also publically protested Pastor Saeed's detention and worked tirelessly to pressure defendants to free him. She also did all she could to help Saeed's family during this

---

[3] Opinions adopted by the Working Group on Arbitrary Detention at its sixty-seventh session, U.N. Doc. A/HRC/WGAD/2013 (21 Oct. 2013).

time. She tried to comfort her parents and siblings, but fearing that their conversations were being listened to, they had limited contact. In 2013-2014, she also moved in with Pastor Saeed's wife to help raise their children.

33.     On January 17, 2016, Pastor Saeed was released as part of a prisoner trade between Iran and the United States, pursuant to which Iran released Pastor Saeed and four other imprisoned Americans in exchange for clemency for seven Iranians indicted or imprisoned in the United States for sanctions violations. The prisoner trade also resulted in the release of certain frozen Iranian assets in the United States.

34.     Pastor Saeed's confinement caused him severe and extreme psychological distress, both during his imprisonment and after his release. Since returning to the United States, Pastor Saeed has suffered post-traumatic stress disorder and other lasting psychological damage from his captivity and torture.

35.     Pastor Saeed's reputation and financial situation has also suffered as a result of his 1,208 days of captivity and torture.

36.     The above also took a heavy toll of Zibandeh, both during Pastor Saeed's imprisonment and after his release. She has suffered post-traumatic stress disorder and other lasting psychological damage due to Pastor Saeed's captivity and torture.

## COUNT I

### (PERSONAL INJURIES CAUSED BY TORTURE AND HOSTAGE-TAKING: 28 U.S.C. § 1605A)

37.     Paragraphs 1 through 33 above are incorporated as if set forth herein.

38.     Pastor Saeed was a citizen of the United States when arrested and held unlawfully by Iran. While being held, Pastor Saeed was physically and psychologically tortured as described herein.

39.     Anti-terrorism provisions codified at 28 U.S.C. § 1605A(a) establish a federal right of action against Iran for committing acts of hostage-taking and torture.

40.     Section 1605A provides four elements for a claim against a foreign state, all of which are met here:

    a.  That defendant be designated as a state sponsor of terrorism;

    b.  That claimant be a national of the United States;

    c.  That the foreign country must be given reasonable opportunity to arbitrate that claim if the conduct took place of foreign soil; and

    d.  That the act alleged to be caused by "an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act . . . ."

41.     Iran was designated a state sponsor of terrorism by the Secretary of State on January 19, 1984. *See* 49 Fed. Reg. 2836 (Jan. 23, 1984).

42.     Pastor Saeed was a citizen of the United States at the time of his imprisonment and torture.

43.     The definition of "torture" under FSIA, derived from § 3 of the Torture Victim Protection Act of 1991 ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (Mar. 12, 1992), codified at 28 U.S.C. § 1350 (note), includes

> Any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person is committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind.

44.     While Pastor Saeed was in Iran's custody and control, Iran intentionally subjected Pastor Saeed to 1,208 days of severe pain and suffering, including solitary confinement, physical and mental abuse, and threats against his life, all with the intent to obtain a false confession and coerce his cooperation.  Iran's conduct constitutes torture as defined under FSIA.

45.     "Hostage-taking" under FSIA, as derived from Article 1 of the United Nations International Convention Against the Taking of Hostages, No. 21931 (Nov. 1, 1979), is defined as follows:

> Any person who seizes or detains and threatens to kill, to injure or to continue to detain another person (hereinafter referred to as the "hostage") in order to compel a third party, namely, a State, an international intergovernmental organization, a natural or juridical person , or a group of persons, to do or abstain from doing any act as an explicit or implicit condition for the release of the hostage commits the offence of taking of hostages ("hostage-taking") within the meaning of this Convention.

46.     Iran detained Pastor Saeed on false charges and threatened to kill, injure, and continue to detain Pastor Saeed for 1,208 days in an attempt to win money or other concessions from the United States.  Iran's conduct was hostage-taking as defined under FSIA.

47.     A foreign state is held vicariously liable for the acts of its officials, employees, or agents. 28 U.S.C. § 1605A(c)(4).

48.     Pastor Saeed continues to suffer physical and psychological harm to this day as a result of his hostage-taking and torture by Iran.

## COUNT II

### (§ 1605A(c) CAUSE OF ACTION – ASSAULT AND BATTERY)

49.     Paragraphs 1 through 45 above are incorporated as if set for herein.

50.     Iran committed or is responsible for numerous acts of assault and battery upon Pastor Saeed during his confinement and torture.

51.     Under the FSIA, a foreign state stripped of its immunity "shall be liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606.

52.     Iran is stripped of its immunity under the FSIA because of its acts of hostage-taking and torture, and is therefore liable for torts in the same manner and to the same extent as a private individual.

53.     Iran applied force to the person of Pastor Saeed and took actions reasonably tending to create the apprehension of Pastor Saeed that it was about to apply such force to him. Iran also intended harmful or offensive contact with Pastor Saeed without his consent. Iran's conduct included intentionally and repeatedly threatening Pastor Saeed's life, threatening bodily injury, and physically attacking Pastor Saeed.

## COUNT III

### (§ 1605A(c) CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

54.     Paragraphs 1 through 50 above are incorporated as if set forth herein.

55.     Iran's use of solitary confinement, sleep deprivation, threats of physical abuse, threats of execution, and restrictions of Pastor Saeed's contact with his family and attorney was intentional and reckless, extreme and outrageous, and cased Pastor Saeed severe emotional distress.

56.     Iran's treatment of Pastor Saeed violated acceptable norms of treatment under both U.S. and international law, and was also for that reason extreme and outrageous.

57.     Iran's actions left Pastor Saeed severely emotionally and psychologically damaged.

## COUNT IV

### (§ 1605A(c) CAUSE OF ACTION – FALSE IMPRISONMENT)

58.     Paragraphs 1 through 54 above are incorporated as if set forth herein.

59.     Pastor Saeed was deprived of liberty without cause and without legal justification. Iran held Pastor Saeed despite knowledge that they had no basis to do so.

## COUNT V

### (§ 1605A(c) CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS/LOSS OF SOLATIUM)

60.     Paragraphs 1 through 56 above are incorporated as if set forth herein.

61.     28 U.S.C. §§ 1605A(c) creates a cause of action against Iran for its participation in and support of the hostage taking and torture of Pastor Saeed.

62.     As a direct and proximate consequence of Iran's actions, the plaintiffs have suffered economic damages, including, inter alia, loss of accretions and loss of assistance, for which they are entitled to compensation pursuant to 28 U.S.C. § 1605A(c).

63.     As a further direct and proximate result of the hostage taking and torture of Pastor Saeed, his sister Zibandeh has suffered extreme loss of solatium, entitling her to compensatory damages pursuant to 28 U.S.C. § 1605A(c).

64.     The conduct of Iran, acting in concert to carry out their unlawful objectives, was outrageous, malicious, in willful, wanton and reckless disregard of the rights of the plaintiffs. As such, the plaintiffs are entitled to punitive damages against Iran.

## PRAYER FOR RELIEF

1.      As a result of the personal injuries he has suffered due to the acts of torture and

hostage-taking, Pastor Saeed is entitled to economic damages and compensatory damages for

pain and suffering, all of which are recoverable under the FSIA. 28 U.S.C. § 1605A.

2.      As a result of the personal injuries Pastor Saeed has suffered due to the acts of

torture and hostage-taking, Zibandeh Abedini Galangashy is entitled to economic damages and

compensatory damages for loss of solatium, all of which are recoverable under federal and/or

state law.

4.      In addition to all appropriate compensatory damages, plaintiffs are entitled to

punitive damages because Iran's acts were intentional, malicious, and performed deliberately to

injure, damage, and harm Pastor Saeed and his family.

5.      Plaintiffs further seek costs, attorney's fees, and such other relief as may be just

and proper, including pre-judgment interest.

Dated:  March 16, 2018

Respectfully submitted,


 /s/ Christopher M. Seleski
Christopher M. Seleski (D.C. Bar #NJ017)
Tolmage, Peskin, Harris & Falick
20 Vesey Street
Suite 700
New York, NY 10007
Tel: (212) 964-1390
Fax: (212) 608-1390
seleski@tolmagepeskinlaw.com

*Counsel for Plaintiffs*